1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    LIBERTY MUTUAL INSURANCE
     COMPANY,                              Case No. 19-cv-07306-PJH
8
             Plaintiff,
9                                          **ORDER GRANTING MOTION FOR**
         v.                                **PARTIAL SUMMARY JUDGMENT**
10
                                           Re: Dkt. No. 60
11   VILA CONSTRUCTION COMPANY, et
     al.,
12
             Defendants.
13

14       Before the court is plaintiff Liberty Mutual Insurance Company's ("plaintiff")

15   unopposed motion for partial summary judgment against defendants Vila Construction

16   Co. ("Vila Construction"), the RMV Family Trust dated September 19, 2013 (the "RMV

17   Trust"), Richard H. Vila in his individual and trustee capacity, and Maria E. Vila in her

18   individual and trustee capacity (collectively, the "Vila Construction defendants"). Having

19   read plaintiff's papers and carefully considered its argument and the relevant legal

20   authority, and good cause appearing, the court hereby **GRANTS** the motion for partial

21   summary judgment.

22                                    **BACKGROUND**

23       Plaintiff is an insurance company. As part of its business, plaintiff serves as

24   surety. Dkt. 1 (Compl). ¶ 3. In other words, plaintiff guarantees debts issued on behalf of

25   other parties. There are two debt instruments at issue in this action: payment bonds and

26   performance bonds (collectively, "bonds"). Around 2016, plaintiff began to issue bonds

27   on behalf of Vila Construction. Id. ¶ 22. The bonds concerned various public works

28   projects in the Bay Area. Id. On December 5, 2016, plaintiff and the Vila Construction

1   defendants entered into a General Agreement of Indemnity (the "indemnity agreement")

2   in plaintiff's favor as partial consideration for plaintiff issuing the subject bonds.  Id. ¶ 19;

3   Dkt. 60-2 at 2-10 (Agt.).  The court will detail the indemnity agreement's relevant

4   provisions in its analysis.

5           Jason Stonefeld ("Stonefeld") serves as plaintiff's in-house counsel.  Dkt. 60-1

6   (Stonefeld declaration) ¶ 3.  In his declaration, Stonefeld explains that, sometime around

7   November 2018, Vila Construction began to fall behind on payables due on several

8   projects.  Id.  ¶ 33.  Plaintiff advanced funds to it to cover those payables.  Id. ¶ 35.

9           Then things got worse.  Obligees and other claimants began to make claims

10  against the bonds.  Id. ¶ 37.  They alleged that Vila Construction defaulted on certain

11  performance and payment obligations on the projects.  Id.  Plaintiff then evaluated those

12  claims.  Id. ¶ 38.  In his role as surety counsel, Stonefeld determined that plaintiff was

13  required to make "disbursements" (i.e., payments) to claimants pursuant to plaintiff's

14  obligations under the bonds.  Id. ¶¶ 40, 42.  Plaintiff also made various other payments to

15  cover "fees, costs, and expenses" incurred to investigate, settle, litigate, or otherwise

16  resolve those claims.  Id. ¶¶ 41, 43.

17          On November 6, 2019, plaintiff filed the instant action.  In it, plaintiff asserts ten

18  claims against the Vila Construction defendants and other co-defendants not relevant to

19  the instant motion.  Compl. ¶¶ 8-13, 40-45.  At core, plaintiff seeks to recover the money

20  that it has paid and will continue to pay in connection with the bonds it issued on Vila

21  Construction's behalf.

22          On November 30, 2020, plaintiff filed the instant motion for partial summary

23  judgment.  Dkt. 60.  In it, plaintiff seeks limited relief.  In particular, plaintiff asks the court

24  to enter partial judgment against the Vila Construction defendants on its first claim

25  against them for breaching the indemnity agreement.  Dkt. 60 at 5-6.  Plaintiff asserts that

26  these defendants are jointly and severally liable under that agreement for

27  $45,055,493.92, comprising $39,997,733.09 in principal and $5,057,760.84 in statutory

28  interest.  Id.

2

United States District Court
Northern District of California

Pursuant to this district's local rules, the Vila Construction defendants were required to file their opposition by December 14, 2020.  However, the Vila Construction defendants did ***not*** file any opposition to plaintiff's motion.  Then, on February 2, 2021, the parties filed a stipulation requesting that the court extend certain pretrial dates and deadlines.  Dkt. 62.  In response, the court ordered a telephonic conference.  Dkt. 63.

During the conference, the court asked counsel for the Vila Construction defendants why they failed to file an opposition to the subject motion.  According to counsel, there were technical issues with the registration of his firm's email address on this court's electronic case filing ("ECF") system.  Dkt. 65 (February 11, 2021 meeting minutes).  Counsel stated that he did not learn about the pending motion until mid-January.  Id.  The court informed counsel that it could not and would not grant leave to file an opposition to the subject motion unless the Vila Construction defendants first sought it.   Counsel stated that the Vila Construction defendants would not seek leave to file a late opposition.  Id.  The court then explained that the instant motion stands unopposed and under submission.  Id.

The court permitted the parties until March 4, 2021 to settle this action.  Id.  On March 5, 2021, plaintiff filed a statement indicating that no portion of this case had settled and requesting that the court rule on the instant motion.  Dkt. 72.  To date, the court has not heard anything in response from any of the defendants in this action.

## DISCUSSION

### I.      Legal Standard

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id. "A 'scintilla of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,' is not sufficient to

present a genuine issue as to a material fact."  United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989).

Courts recognize two ways for a moving defendant to show the absence of a genuine dispute of material fact: (1) proffer evidence affirmatively negating any element of the challenged claim or (2) identify the absence of evidence necessary for plaintiff to substantiate such claim.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.").  Rule 56(c)(1) expressly requires that, to show the existence or nonexistence of a disputed fact, a party must "cit[e] to particular parts of materials in the record."  Fed. R. Civ. Pro. 56(c)(1).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  S. California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003) ("As the party with the burden of persuasion at trial, [plaintiff] must establish beyond controversy every essential element of its [claim under the Constitution's Contract Clause]."); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986) ("Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor.") (italics in the original).  That said, on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Cattrett, 477 U.S. at 325; In re Brazier Forest Prod., Inc., 921 F.2d 221, 223 (9th Cir. 1990) ("[I]f

4

the nonmoving party bears the burden of proof on an issue at trial, the moving party need not produce affirmative evidence of an absence of fact to satisfy its burden. The moving party may simply point to the absence of evidence to support the nonmoving party's case. The nonmoving party must then make a sufficient showing to establish the existence of all elements essential to their case on which they will bear the burden of proof at trial.") (quoting Celotex Corp. at 322-23).

"Where a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." Friedman v. Live Nation Merch., Inc., 833 F.3d 1180, 1188 (9th Cir. 2016) (internal citations omitted).  The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id.

The court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. Tolan v. Cotton, 134 S. Ct. 1861, 1865 (2014); Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).  If the nonmoving party fails to produce evidence rebutting the moving party's initial showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp., 477 U.S. at 323.

## II.        Analysis

An indemnity is an "obligation resting on one party to make good [on] a loss or damage another party has incurred."  Smoketree-Lake Murray, Ltd. v. Mills Concrete Constr. Co., 234 Cal. App. 3d 1724, 1734 (1991).  A claim for indemnification may arise out of equity or contract.  Id. at 1737 ("In contrast, express indemnity rests on the contract of the parties; it is the language of the contract, rather than the equities of the situation which govern.")

1    The California Supreme Court has indicated that a claim for breach of an

2 indemnity agreement rests on materially similar elements to those required to show a

3 claim for breach of contract.  Reichert v. Gen. Ins. Co. of Am., 68 Cal. 2d 822, 826, 830

4 n.5 (1968).  Such elements include "(1) the contract, (2) plaintiff's performance or excuse

5 for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff."

6 Id. at 830.  More recently, California intermediate appellate courts have explained that an

7 indemnitee must specify its "performance of that portion of the contract which gives rise

8 to the indemnification claim" and establish "facts showing a loss within the meaning of the

9 parties' indemnification agreement."  Four Star Elec., Inc. v. F & H Constr., 7 Cal. App.

10 4th 1375, 1380, 10 Cal. Rptr. 2d 1, 3 (1992), reh'g denied and opinion modified (Aug. 4,

11 1992).

12    As detailed below, the court concludes that plaintiff's uncontroverted evidence

13 conclusively establishes each element of its claim for breach of the indemnity agreement

14 against the Vila Construction defendants.

15    **A.    The Parties Entered into the Indemnity Agreement**

16    In his declaration, Stonefeld attaches a copy of the indemnity agreement at issue.

17 In its introduction, the indemnity agreement provides that "[t]his [indemnity agreement] is

18 between the Indemnitors, Vila Construction Company; RMV Family Trust dated

19 September 19, 2013; Richard H. Vila; Maria Elena Vila . . . in favor of Surety with respect

20 to any Bond requested from or issued by Surety before or after the date of this

21 Agreement, for any Principal . . ."  Agt., Intro.

22    In turn, Section 1 defines "Indemnitor" to mean the following:

23       individually and collectively, the persons and entities listed in
         the introductory paragraph of the Agreement . . . Agt. § 1.
24

25    Thus, if Vila Construction, the RMV Trust, Richard Vila, and Maria Vila signed the

26 indemnity agreement, then they qualify as indemnitors.  Richard Vila and Maria Elena

27 Vila's signature appears at pages nine and ten of that agreement.  Id. at 9-10.  When

28 signing, both defendants did so in both their individual and trustee capacities.  Id.

United States District Court
Northern District of California

1   Richard Vila also signed as president of Vila Construction.  Id.  Both defendants signed

2   before a notary public.  Id.

3        Separately, in their answers, the Vila Construction defendants admitted to signing

4   the indemnity agreement.  Dkt. 21 at 4:13-17; Dkt. 22 at 4:7-10; Dkt. 23 at 4:4-7.[1]  Given

5   the noticeable pleadings and evidence presented, the court finds that plaintiff has

6   established a contract between it and the Vila Construction defendants.

7        **B.    Plaintiff Performed Its Obligations under the Indemnity Agreement and**

8              **as Bond Surety**

9        In its opening brief, plaintiff fails to specify the exact provision in the indemnity

10   agreement that it performed and "gives rise" to its indemnification claim.  Instead, plaintiff

11   summarily argues "[i]t is undisputed that Liberty performed its obligations under the

12   Indemnity Agreement."  Dkt. 60 at 18.  To support that argument, plaintiff cites

13   Stonefeld's statement that "Liberty fully performed all of its obligations under the

14   Indemnity Agreement."  Dkt. 60-1 ¶ 55.  Plaintiff also vaguely cites the indemnity

15   agreement in its entirety.  Dkt. 60 at 18.

16       Despite plaintiff's failure to thoroughly explain its position, it appears to the court

17   that plaintiff bases the subject performance on two sources.  First, plaintiff's actual

18   issuance of the bonds underlying this action, which, as the Vila Construction defendants

19   indicate in their answers, served as plaintiff's consideration for the indemnity agreement.

20   See, e.g., Dkt. 23 at 4:4-7 (Richard Vila "admits that . . . the defendant entered into an

21   Agreement of Indemnity with plaintiff for partial consideration ***for plaintiff to issue***

22   ***surety bonds on behalf of*** Vila Construction Company.") (emphasis added).  Second,

23   Section 4's suggestion that plaintiff might be held liable to obligees and claimants under

24   the bonds that it issued on Vila Construction's behalf.  Agt. § 4 ("Indemnitors shall pay

25   Surety for Loss promptly upon demand. If Surety makes any Loss payment . . . Surety is

26

27   _____
     [1] The court **DENIES** plaintiff's request for judicial notice of the various documents filed on
     the docket in this case.  Dkt. 60-3.  The court can always take notice of any filing on its
28   own docket.  Going forward, plaintiff need only cite the relevant docket entry and page or
     line.

United States District Court
Northern District of California

1  entitled to recover from Indemnitors all disbursements made by it in good faith **under the**

2  **belief that it is or was or might be liable for the sums and amounts disbursed** or

3  that it was necessary or expedient to make such disbursements, whether or not such

4  liability, necessity or expediency existed . . .") (emphasis added).

5        Having identified those bases, the court finds that plaintiff proffered evidence

6  sufficient to conclusively establish that it performed the obligations giving rise to the

7  instant claim.  First, as part of his declaration, Stonefeld attaches exhibits showing that it

8  issued at least 19 bonds on Vila Construction's behalf.  Dkt. 60-2 at 43-102.  The court

9  will explain and detail the content of those exhibits in its damages analysis below.

10        Second, as noted above, Stonefeld explains in his declaration that, starting in

11  November 2018, Vila Construction began to fall short on certain payables and expenses

12  due on several projects.  Dkt. 60-1 ¶ 34-35.  To cure such shortcomings, plaintiff

13  advanced funds to Vila Construction.  Id.  Stonefeld explains that obligees and claimants

14  then began to make claims on various bonds.  Id. ¶ 37.  Plaintiff used in-house resources

15  to investigate such claims.  Id. ¶ 38.  Plaintiff later retained various consultants to assist

16  such investigation.  Id. ¶ 39.  Where necessary, plaintiff engaged other construction

17  contractors "to complete the performance of its obligations" under some of the bonds.  Id.

18        Based on his investigation, Stonefeld directed plaintiff to disburse payments to

19  claimants pursuant to its obligations under the bonds and applicable law.  Id. ¶ 40

20  (payment bonds); Id. ¶ 42 (performance bonds).  Stonefeld further directed plaintiff to

21  disburse funds for "fees, costs, and expenses" incurred to investigate and resolve the

22  claims made under the bonds.  Id. ¶ 41 (payment bonds); Id. ¶ 43 (performance bonds).

23  Stonefeld states that he issued these directions "in good faith under the belief that

24  [plaintiff] is or was or might be liable for the sums and amounts disbursed or that it was

25  necessary or expedient to make such disbursements" and pursuant to plaintiff's "right, at

26  its option . . . to . . . compromise any claim . . .upon any bond."  Id. ¶¶ 40-44.

27        Incident to their failure to file any opposition, the Vila Construction defendants fail

28  to proffer any evidence disputing plaintiffs' claimed series of events.  Given that and the

United States District Court
Northern District of California

8

1   evidence presented, the court finds that plaintiff has established that it performed its

2   obligations under the indemnity agreement and associated bonds.

3       **C.    Plaintiff Suffered a "Loss" under the Indemnity Agreement**

4       Section 4 states that "[I]ndemnitors shall exonerate, hold harmless, indemnify, and

5   keep Surety indemnified from all liability for Loss." Agt. § 4. Section 1, in turn, defines

6   "Loss" as "any loss, fees, costs and expenses, including pre- and post-judgment interest

7   at the maximum rate permitted by law, court costs, counsel fees, accounting, engineering

8   and outside consulting fees, which Surety may sustain or incur or otherwise determine to

9   pay in its sole and absolute discretion, by reason of" one of the following four events:

> (a) a request for a Bond;
> (b) execution or procurement of a Bond, including any cost incurred by Surety in fulfilling its obligations under any Bond;
> (c) the failure of Indemnitors to comply with any covenants or conditions of this Agreement or Other Agreement; or
> (d) in enforcing any of the covenants and conditions of this Agreement or Other Agreements. Agt. § 1

14      As detailed immediately above, plaintiff has made numerous payments since

15  November 2018 to satisfy its obligations under the bonds. Dkt. 60-1 ¶¶ 40, 42. Plaintiff

16  has also made numerous payments for fees, costs, and expenses incurred to investigate

17  and resolve bond claims. Id. ¶¶ 41, 43. The Vila Construction defendants do not contest

18  such disbursements. Given that and the evidence presented, the court finds that plaintiff

19  has established that it has suffered loss within the meaning of the indemnity agreement.

20      **D.    The Vila Construction Defendants Breached the Indemnity Agreement**

21      Section 4 provides that the Vila Construction defendants "shall pay Surety for Loss

22  promptly upon demand." Agt. § 4. In his declaration, Stonefeld states that:

> Before and after filing its Complaint in this action, Liberty requested, both orally and in writing, for Defendants to "exonerate, hold harmless, indemnify, and keep Surety indemnified from all liability for "Loss" under the Indemnity Agreement. Defendants failed, and continue to fail, to do so. Dkt. 60-1 ¶ 54.

27      Again, the Vila Construction defendants do not contest such failure. Accordingly,

28  the court finds that plaintiff has established that the Vila Construction defendants

United States District Court
Northern District of California

breached the indemnity agreement.

### E.    Plaintiff Proffered Prima Facie Evidence Showing Its Damages

In its opening brief, plaintiff asserts that it satisfies its burden under Rule 56 because the Stonefeld declaration and its attached exhibits serve as "prima facie evidence" of the Vila Construction defendants' liability under the indemnity agreement. Dkt. 60 at 21.  To support that assertion, plaintiff relies on Section 4's so-called "prima facie evidence" provision, stating the following in relevant part:

> **If Surety makes any Loss payment, Indemnitors agree that** in any accounting . . . , between Surety and Indemnitors . . . Surety is entitled to recover from Indemnitors all disbursements made by it in good faith under the belief that it is or was or might be liable for the sums and amounts disbursed or that it was necessary or expedient to make such disbursements . . . **and that** . . . **other evidence of any such payments** made by Surety **shall be prima facie evidence of the fact and amount** of the liability to Surety.  Agt. § 4 (emphasis added).

Courts outside this circuit have explained that, in the context of an indemnity agreement, a prima facie evidence provision "shifts to the indemnitor the burden of proving that the costs incurred were not recoverable."  Fallon Elec. Co. v. Cincinnati Ins. Co., 121 F.3d 125, 129 (3d Cir. 1997) (interpreting and applying Pennsylvania law).  California courts have acknowledged that this sort of provision is enforceable.  Fid. & Deposit Co. of Md. v. Whitson, 187 Cal. App. 2d 751, 757 (1960) ("Under the provisions of paragraph Tenth, the foregoing exhibits constituted _prima facie_ proof of the fact of such payment and the extent of appellant's liability under the contract; these provisions, it appears, have the sanction of decisional law . . . indeed, there is authority supporting the validity of provisions that vouchers or other evidence of payment shall be _conclusive_ evidence thereof upon a showing that payment was made in good faith.") (italics in the original).

In his declaration, Stonefeld proffers 20 exhibits purportedly summarizing the payments plaintiff has made in connection with the subject bonds.  While plaintiff neglects to cite it, Federal Rule of Evidence 1006 provides the following in relevant part:

> The  proponent  may  use  a  summary,  chart,  or  calculation  to

1

2

3

> prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place.  Fed. R. Evid. 1006.

4

5

6

7

8

9

The Ninth Circuit has interpreted this rule to permit the admission of an exhibit to prove a fact at issue if the following two conditions are satisfied: (1) the proponent establishes a foundation that the underlying materials on which the summary exhibit is based are admissible in evidence; and (2) those primary materials were made available to the opposing party for inspection.  Amarel v. Connell, 102 F.3d 1494, 1516 (9th Cir. 1996), as amended (Jan. 15, 1997).

10

11

12

13

14

15

16

17

18

Here, the court finds that both conditions have been satisfied with respect to all 20 exhibits attached to Stonefeld's declaration.  In his declaration, Stonefeld states that plaintiff maintains an electronic reporting system that records, tracks, and accounts for payments made or received by plaintiff concerning its surety claims (the "claims system"). Dkt. 60-1 ¶¶ 5-7.  He explains that plaintiff maintains the claims system as part of its regular business practice to manage its losses, costs, payments, expenses, attorneys' fees, and recoveries (i.e., credits against the amount owed to plaintiff).  Id. ¶¶ 8-16.  He specifies that the claims system provides accurate statements of plaintiff's losses, costs, expenses, payments, attorneys' fees, and recoveries.  Id. ¶ 15.

19

20

21

22

23

24

25

26

27

28

Stonefeld is a custodian of record for all files in plaintiff's possession regarding the accounting related to Vila Construction.  Id. ¶ 20.  He is personally knowledgeable about the claims system as it relates to the Vila Construction defendants.  Id. ¶ 19.  He used the claims system to print a cumulative report showing the history of plaintiff's losses, costs, expenses, attorneys' fees, payments, and recoveries made or received by it in connection with the bonds issued to Vila Construction (the "loss history report").  Id. ¶¶ 22-23.  He provides that 32-page report as Exhibit 2 of his declaration. Dkt. 60-2 at 11-42.  Using the loss history report, Stonefeld then created 19 separate loss summary reports for each bond at issue (collectively, the "loss summary reports").  Dkt. 60-1 ¶ 26. He attaches those reports as Exhibits 3-21 of his declaration.  Dkt. 60-2 at 43-102.  The

United States District Court
Northern District of California

11

information provided in these reports is current through the date plaintiff filed the instant motion, November 30, 2020.  Dkt. 60-1 ¶ 45.

The court concludes that the summary exhibits are based on primary records that would be admissible in evidence.  First, Stonefeld establishes that the claims system relies on "entries" and "data," Dkt. 60-1 ¶ 13, which may come in the form of "forms, files, and documents," id. ¶ 6.

Second, Stonefeld shows that the claims system accurately records and reflects the content of such primary records.  In particular, he states that claims systems' entries "are made pursuant to Liberty's established procedures for the systematic, routine, and timely update of the claims system."  Id. ¶ 13.  He adds that plaintiff has "built safeguards into the claims systems to ensure accuracy and to identify errors."  Id.

Third, the court repeats, the Vila Construction defendants do not oppose the instant motion.  Given that, the court infers that they either did not seek to examine the primary documents or do not care to do so.  In any event, they proffer no basis on which to find that the primary documents were unavailable to them.  Accordingly, pursuant to Rule 1006, the court will consider the summary loss reports as prima facie evidence of plaintiff's damages.

The court turns to the merits of these reports.  The loss summary reports range between one and six pages.  Each report lists numerous rows detailing certain transactions associated with a particular bond.  Each transaction includes information divided into seven columns.  Those columns detail the following sorts of information:

- Bond number – Each bond has a distinct number.
- Principal – Vila Construction appears as principal for the vast majority of principal entries.  (Two exhibits also include a "Tulum Joint Ventures" as principal.  Dkt. 60-2 at 81-86 (Exhibit 15); Id. at 102 (Exhibit 21)).
- Payee – A payee may include a bond obligee, Vila Construction, a construction company, a construction consultant, a law firm, an accounting firm, or some other unspecified business entity.

United States District Court
Northern District of California

- Cost category – Costs are divided into six types: expenses (EXP), disbursements for performance bonds (PER), disbursement for payment bonds (PAY), recoveries of a contract balance from an obligee on a bonded contract (CB), recoveries of funds other than contract balances (SAL), and expenses for special costs for recovering from non-contract balances (SE).
- Check date – All checks were issued between November 2018 and November 2020.
- Check number – All checks include a particular number.
- Sum amount – The amounts vary from less than one dollar to over $700,000.  These sums reflect both plaintiff's payments and recoveries.

After accounting for payments and recoveries made in connection with its respective bond, each loss summary report details a bottom-line summary of loss.  The following table shows each report's bottom-line summary of loss per bond:

| Docket 60-2 Page Range | Exhibit Number | Bond Number | Total Loss (or Recovery) |
|---|---|---|---|
| 43-44 | 3 | 070022717 | $842.00 |
| 45-46 | 4 | 070022728 | $57,592.84 |
| 47-48 | 5 | 070022736 | ($25,350.83) |
| 49-50 | 6 | 070022737 | $1,155,921.76 |
| 51-55 | 7 | 070022739 | $9,299,993.09 |
| 56-61 | 8 | 070022740 | $3,417,949.92 |
| 62-63 | 9 | 070022742 | $3,000.00 |
| 64-65 | 10 | 070022745 | $124,312.23 |
| 66-70 | 11 | 070022750 | $2,926,082.83 |
| 71-74 | 12 | 070022751 | $4,148,577.09 |
| 75-76 | 13 | 070205384 | $45,509.79 |
| 77-79 | 14 | 070205385 | $512,314.44 |
| 80-86 | 15 | 070205386 | $7,138,934.34 |

| 87-88 | 16 | 070205388 | $16,086.25 |
| 89-90 | 17 | 070205389 | $2,442.16 |
| 91-94 | 18 | 070205398 | $3,966,774.72 |
| 95-98 | 19 | 070205399 | $7,206,368.05 |
| 99-100 | 20 | 070205404 | ($4,387.09) |
| 101-02 | 21 | 070205417 | ($4,769.50) |

The court personally summed the total net loss for all bonds. Based on that tally, the court calculated a total principal loss of **$39,988,194.09**.[2]

Again, the Vila Construction defendants do not contest the evidence proffered by plaintiff in support of its principal loss. Given that and the evidence presented, the court finds that plaintiff has established that the Vila Construction defendants are jointly and severally liable to it for **$39,988,194.09** in principal loss.

Lastly, in his declaration, Stonefeld attaches a final exhibit (Exhibit 22) detailing the amount of statutory interest owed to plaintiff incident to its claimed principal. In sum, plaintiff asserts that the Vila Construction defendants owe it **$5,057,760.83** in interest. Dkt. 60-2 at 103-31. The Vila Construction defendants fail to contest that amount. Given that and the evidence presented, the court further finds that plaintiff has established that the Vila Construction defendants are jointly and severally liable to it for **$5,057,760.83** in interest.[3] In light of its findings, the court concludes that the Vila Construction defendants are jointly and severally liable to plaintiff for **$45,045,954.92** on the basis of plaintiff's claim against them for breach of the indemnity agreement.

## CONCLUSION

For the above reasons, the court **GRANTS** Liberty's motion for partial summary

---

[2] The court understands that this amount is approximately $9,000 less than that claimed by plaintiff. The court, however, summed this number twice and is confident in its arithmetic.

[3] The court acknowledges that this amount relies on the $9,000 included in plaintiff's calculation of the total claimed principal. The court finds that any additional interest owed on part of such reliance would be de minimis. Also, the Vila Construction defendants fail to oppose plaintiff's proffered interest amount. As a result, the court will adopt that amount in full.

judgment.

   **IT IS SO ORDERED.**

Dated: March 12, 2021

                                             /s/ Phyllis J. Hamilton
                                             PHYLLIS J. HAMILTON
                                             United States District Judge